Penn Insurance Co. *v.* Semple.

The Penn Mutual Life Insurance Company, appellant,

*v.*

John Semple, respondent.

1. Certain machines, which were entirely finished before they were brought to and set up in a factory, and required no particular adaptation for use therein, nor any alteration in the factory itself, and which could be removed therefrom without injury to themselves or to the building, were, as between the mortgagee and a subsequent judgment creditor of the mortgagor, held not to be covered by a mortgage of lands, including the factory and also "the steam engines, boilers, shafting, belting, gearing and all other machinery appertaining to said premises, now upon said premises or that shall hereafter be placed or erected thereon."

2. Other questions touching the validity of respondent's claim as between the appellant and respondent, not embodied in the petition of appeal, and not the subject of proof or consideration in the court below, ought not to be given a hearing in this court.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is as follows :

The above-named complainant is also the petitioner, asking for an injunction restraining a judgment creditor from selling certain machinery, which, the complainant insists, is included in its mortgage. The mortgage of the complainant is on "all that certain lot of land with the brick factory thereon erected, * * * together with the steam engines, boilers, shafting, belting, gearing and all other machinery appertaining to said premises, now upon said premises, or that shall hereafter be placed or erected thereon."

As between the contracting parties, this was, unquestionably, a pledge of the land, the brick factory and "all machinery appertaining to said premises," then upon said premises, or that may have been placed thereon since. But a judgment creditor makes claim to "a guide, cutting-machine, two spooling-tables, five winding-frames, two spinning-frames, forty spooling-heads, one

automatic table, one pounding-machine, fifty-one cards, twelve roving-frames, six drawing frames, one lap-machine, three railway-heads, three dubler-heads, two spreaders and picker, one grinding-machine, twelve mules, four spinning-frames, nineteen dressing-machines, seventeen spindle-frames, one drill-press, forty-seven twisting-machines, eight cap-spools, one re-winder, eight reels, two lap-machines and one cotton-opener," as personal property, subject to sale under his execution, while the complainants insist that said articles are " machinery appertaining to the said mortgaged premises," and subject to said mortgage.

" The dressing-machines have four feet each, each foot being surrounded by a wooden cleat three inches and a half, annexing them to the floor, to keep the machine steady and in place ;" the frames are attached to the floor in the same manner. The carding-machines are attached to the floor by means of four screws, one at each foot; the screw used is about three-eighths of an inch thick by two long. The dubler is screwed to the floor by three common two-inch screws. The railway-heads are fastened in a similar manner to the carding. The mules are attached to the floor by two-inch screws, one in each foot, each mule having from seventeen to nineteen feet. The ring-frames are attached in the same manner. The rest of the machinery in dispute is fastened to the floor in about the same manner as that above named. Several of these machines have been moved from one place to another, in the same building, without inconvenience.

Did these machines pass to the mortgagee, as against a judgment creditor of the mortgagor? What was mortgaged? A brick factory and all the machinery appertaining thereto. In *Del., Lack. and W. R. R. Co.* v. *Oxford Iron Co., 9 Stew. Eq. 452, 455*, the chancellor says : " Mortgage of factory *eo nomine* includes, *ex vi termini*, all the machinery and other articles essential to the factory," citing *Ewell on Fixtures 308* and other authorities, all fully sustaining this view. The cases are not similar. In the case cited, after the mortgage was delivered, the mortgagor became insolvent, and his property was given over to a receiver, the mortgage was foreclosed and the mortgaged prem--

ises sold under the execution issued on the final decree.  The controversy as to the title to the machinery arose between the purchaser and receiver.  In the case now submitted, the controversy is between the mortgagee and a judgment creditor.  In the case cited, it was most manifestly the intention of the parties to give and receive a mortgage on the machinery, as well as the land and factories; in this case, the language used in the conveyance is equally as clear and comprehensive.  If the point of difference was between the mortgagee and mortgagor, the former must prevail, as the purchaser in the case cited did against the receiver, who stood in the place of the mortgagor.

But in this case, the judgment creditor says, as between him and the mortgagee, all the machinery named is personal property.  He insists that the slight means used to connect it with the building was not designed to make it a permanent addition to the building, but only to keep it securely in place while in use.  This being so, he urges that it is subject to all the laws of personal property; and since the mortgage of the complainant was not recorded, as a chattel mortgage, under our laws, is required to be, the machine did not pass as against the judgment creditor.  The mortgage was recorded as required in case of conveyance of lands, but was neither filed nor recorded as a chattel mortgage.  The statute declares that every mortgage of chattels not accompanied by an immediate delivery and continued change of possession of the things mortgaged, shall be absolutely void as against the creditors of the mortgagor, and as against subsequent purchasers and mortgagees in good faith, unless the mortgage, or a true copy thereof, shall be filed in the clerk's office (*Rev.* p. *709*), and recorded also (*P. L. of 1880 p. 266*), which last applied to the mortgage before us, it having been made within a few weeks after the enactment.  This mortgage was neither "filed" nor "recorded" as a chattel mortgage, and therefore is not within the purview of the statutes.  *Williamson* v. *New Jersey Southern R. R. Co.*, *2 Stew. Eq. 311.*

This brings us back to the inquiry whether or not the machinery enumerated and fastened to the floor, as above described, was so attached as to be denominated fixtures, and consequently

part of the realty. The rules by which to form a judgment are, "first, actual annexation to the realty, or something appurtenant thereto ; second, application to the use or purpose to which it is connected, is appropriated ; third, the intention of the party making the annexation to make a permanent accession to the freehold." *Williamson* v. *New Jersey Southern R. R. Co.*, *2 Stew. Eq. 311, 329; Quinby* v. *Manhattan Co., 9 C. E. Gr. 260, 266; Rogers* v. *Brokaw, 10 C. E. Gr. 496 ; S. C., 11 C. E. Gr. 567.*

Notwithstanding the fairness, wisdom and true liberality of the rules laid down in these cases, the case last cited seems to be decisive of this one, and to make it my duty to advise a decree against the complainant and petitioner. There seems to me to be the most abundant proof that, in this case, the mortgagor intended to convey, by way of mortgage, all of his machines. It seems to me equally clear that it was the intention of the mortgagor and owner of the land and building to make and to consider the machines in that building a part and parcel of the "factory" itself, as much as the "gearing and shafting." The latter is admitted, in all cases, to be fixtures, and yet, in hundreds of cases, vast proportions, if not all the shafting and gearing, can be removed from mills and factories, by withdrawing small screws and bolts, and leave scarce a trace behind. But the law has often been declared that a machine, however ponderous or light, and whether attached to the building or not, by bolts and screws, is not a fixture, whilst the slender shafting which gives motion to the machine, although secured no more permanently, is denominated a fixture. In the case last cited, the vice-chancellor declared the law as it had often been declared before, and the court of last resort affirmed his conclusions. In that case, the owner had erected the building for a factory, and purchased and placed therein machinery to carry on the business intended. He then executed a mortgage on the land, and afterwards a chattel mortgage, including two machines. The holder of the first mortgage claimed the machines under his mortgage ; the holder of the chattel mortgage claimed them as chattels. One of the machines was so heavy as to sit securely without fastening to the floor ; the other was fastened by screws and

bolts. The machines were adjudged to be personal property. *Keeler* v. *Keeler, 4 Stew. Eq. 181 and cases.*

It therefore appears, quite plainly, to be my duty to conclude that, although this mortgage was intended to include this· "factory" and everything essential to make or constitute it a "factory," and, in the law, as between mortgagor and mortgagee, did include everything, yet, as between the mortgagee and a judgment creditor, because the mortgage was not filed nor recorded as a chattel mortgage, did not include the machines enumerated, and to advise a decree accordingly. The petition should be dismissed, with costs.

*Mr. S. H. Grey,* for appellant.

As appears by petition for injunction, the complainant below (appellant here) held two mortgages made by Samuel Semple, Sr., Samuel Semple, Jr., and Robert A. Semple, to complainant, the first dated April 10th, 1880, for $55,000, the other dated December 8th, 1882, for $10,000, on the "'Rancocas Thread Mills,' * * * and the steam engines, boilers, shafting, belting, gearing and all other machinery appertaining to said premises, now upon said premises, or that shall hereafter be placed or erected thereon."

John Semple (respondent) had been a partner with these mortgagors up to August 14th, 1877, when he sold out to the mortgagors, his father and brother, taking a judgment bond on which judgment was entered, execution issued and levy made. At the time of this sale, the "Thread Mills," which were partnership assets, were subject to three mortgages, amounting to about $55,000 or $60,000.

These mortgages secured, or were designed to secure, payment of the bonds of these partners, including John Semple, for the amount named in the mortgages, and covered the "Thread Mills, together with the large brick factory and other buildings on said lot of land erected, and the boilers, engines, shafting, steam pipes, pulleys, gearing, belting, machinery and fixtures of every kind and description whatsoever, now in or connected with said building, or hereafter to be put therein or connected with the same."

In order to obtain money to pay these mortgages, John Semple, respondent, at the request of his father and brothers, his former partners, canceled his judgment on the record in order that the mortgage to complainant of $55,000 might be negotiated and become a first lien on the ' Thread Mills.' " With the proceeds of this mortgage the antecedent mortgages for $60,000 were canceled (April 19th, 1880), and the bond of respondent discharged.

A second judgment, for same consideration as the first, was afterward entered (April 17th, 1880), in favor of respondent, and new execution issued and new levy made on same property as that mortgaged to complainant. This judgment was afterward canceled of record to enable the brothers and former partners of respondent to obtain a new loan from complainant of $10,000, and to secure a priority for that loan over respondent's lien. This new loan was negotiated and is represented by the mortgage of $10,000, spoken of as the " additional sum of $10,000 " in Semple's affidavit.

Immediately after complainant's second mortgage was made a new judgment bond was given, for same consideration, by his surviving partners (his father, Samuel Semple, having meanwhile died), to respondent, who entered judgment, issued execution and made levy. After this levy, which was made about December 15th, 1882, no step was taken to collect until July 17th, 1883 (after foreclosure proceedings were begun on complainant's mortgage), when Semple sold a " portion " of the property levied on by him, but none of that now in controversy, leaving the rest in " abeyance to such time as the mills should be sold."

In all these " transactions," and at " all times, said machinery was treated by " John Semple and the firm of Semple & Sons, complainant mortgagors, " as personal property used for manufacturing purposes in connection with said lands and buildings."

Upon this state of facts the questions are:

1. Was this mortgage of chattels within the meaning of the chattel mortgage act? *Rev. p. 709 § 39.*

2. Was John Semple such a creditor as those referred to in the act?

It must be perfectly manifest that if the intent of the parties to this mortgage has any efficacy in determining the character or

extent of the pledge, this was a mortgage of everything neces-sary " for the operation of the Rancocas Thread Mills." The land on which the buildings were erected, and the machinery in them, with the boiler and engine necessary to drive this ma-chinery, were all pledged by the mortgages to the complainant below. Not only was this so, but all machinery which might be afterwards put on the premises was likewise pledged.

As between the parties, as the vice-chancellor said, the mort-gage did include everything necessary to make or constitute a "factory." This is undoubtedly true, but it was a mortgage of everything, because it was a mortgage of land.

The New Jersey cases all support the view that personalty fixed to land with a view to a use in connection with it, and so used, passes under a mortgage of the land, and consequently is not such a chattel as that contemplated by the statute relating to chattel mortgages.

"When annexed to land it partakes of its qualities, and is subject to its incidents. * * * If not previously covered by the owner, it cannot be mortgaged as a chattel." *Blancke* v. *Rogers, 11 C. E. Gr. 566, 567; Rogers* v. *Brokaw, 10 C. E. Gr. 495; Fish* v. *New York Water Proof Paper Co., 2 Stew. Eq. 16; S. C. on appeal, Id. 610; Quinby* v. *Manhattan Co., 9 C. E. Gr. 260.*

The intent of parties is a controlling circumstance. Here the intent clearly was to pass the factory *eo nomine.* The mortga-gors described the mortgaged premises as the "Rancocas Thread Mills," and then specifically mentioned all the "machinery" in, or which might be put in, said mills.

In *D., L. & W. R. R.* v. *Oxford Iron Co., 9 Stew. Eq. 452,* the chancellor, upon this doctrine of intent, held that "blueing machines" and "nail pans" passed under a mortgage of land. Neither was or had been attached or affixed to the land, but they were a necessary part of the mechanism of the manufacturing establishment designed to be mortgaged.

2. John Semple was not such a creditor as those referred to in the statute.

The design of the act was to protect creditors against any pos-

sibility of fraudulent conduct in the disposition by debtors of their property. John Semple had received the benefit of the loan from complainants. His bond had been discharged by their payment of the old mortgages. They would be entitled to be subrogated to the position of original mortgagees and obligees under that bond, and hence, in equity, John Semple must be regarded as the debtor of complainant until that advance is paid. Clearly, complainant paying John Semple's debt on the old bond, can claim the place of his creditor on that bond, and take, as such creditor, any security which that creditor had or was entitled to claim. The case, then, must be treated as if the old bond and mortgages were outstanding. In this point of view, John Semple owes complainant $55,000, and has pledged for its payment this very machinery. He is not a creditor entitled to protection. He is a debtor seeking to perpetrate a fraud.

*Mr. Mercer Beasley, Jr.,* for respondent.

Samuel Semple *et al.* were the owners of what was known as the " Rancocas Thread Mills," and wanting money, gave a mortgage to above complainants to secure the same. After giving the usual description of the premises by metes and bounds, there followed this clause: "Also, the steam engines, boilers, shafting, belting, gearing, and all other machinery appertaining to said premises, now upon said premises, or that shall hereafter be placed or erected thereon." That was simply recorded as a mortgage upon real estate. After that, the mortgagors of said mortgage confessed a judgment to John Semple, which was entered up, an execution issued, and a levy made upon the various machinery, which will be found set out in detail in the petition.

The mortgagees foreclosed the mortgage, and John Semple, the judgment creditor, advertised said machinery for sale; then the mortgagees filed a petition for an injunction restraining said John Semple from proceeding to make his judgment out of said machinery. A rule to show cause was made, and upon final hearing the vice-chancellor refused the injunction. It is on an appeal from said refusal that this case is now here. It will be seen, then, that the only question in the case is whether or not the enumerated machines were part of the realty, or whether

they were not mere chattels, mere personal property. If they were personal property, they should have been treated as chattels, and a lien secured by means of a chattel mortgage. Being personal property, a failure to do this will defeat the said mortgagees' lien in a contest between them and a judgment creditor, even if the said mortgagors and the mortgagees intended to mortgage all this machinery, and supposed it had been done by means of said mortgage.

The said machinery was personal property merely.

From the description as given by the witnesses, the said machinery was clearly personal property under the principles adopted by the following cases of our own : *Williamson* v. *N. J. Southern R. R. Co.,* *2 Stew. Eq. 329 ; Quinby* v. *Manhattan Co., 9 C. E. Gr. 260 ; Rogers* v. *Brokaw, 10 C. E. Gr. 496, 11 C. E. Gr. 567 ; Keeler* v. *Keeler, 4 Stew. Eq. 181 ; Zeller* v. *Adam, 3 Stew. Eq. 424.*

In the case of *Fish* v. *New York Waterproof Paper Co., 2 Stew. Eq. 16, 610,* will be seen the vastly different kind of machinery from that in this case, which our courts have held to be part of the freehold.

See, also, cases in other states on the same question, as follows : *Boyd* v. *Sharrack, L. R. (5 Eq.) 72 ; Hill on Fixtures §§ 64, 71; Fullam* v. *Stearns, 30 Vt. 443 ; Ewell on Fixtures 294; McConnell* v. *Blood, 123 Mass. 47 ; Walker* v. *Sherman, 20 Wend. 636.*

If this machinery, as between mortgagors and mortgagees, was intended to be included, and if, as a fact, it was actually included in the mortgage, still it was not notice to the creditor. See *Williamson* v. *N. J. Southern R. R. Co., 2 Stew. Eq. 329.*

The statute as to chattel mortgages declares that a mortgage of chattels not accompanied by an immediate delivery &c., shall be absolutely void as against creditors, unless the mortgage shall be filed (now, recorded).

The opinion of the court was delivered by

Knapp, J.

The appellant having filed a bill to foreclose a mortgage given

by Samuel Semple and others to the appellant corporation upon certain lands and real estate upon which was a factory called the "Rancocas Thread Mills," including, also, the steam engines, boilers, shafting, belting, gearing, and all other machinery appertaining to said premises, now upon said premises, or that shall hereafter be placed or erected thereon, had in due course a decree for sale of the mortgaged premises. The respondent having a judgment against the mortgagors, levied upon the following machinery : one guide cutting machine, two spooling tables, five winding frames, two spinning frames, forty spooling heads, one automatic table, one pounding machine, fifty-one cards, twelve roving frames, six drawing frames, one lap machine, three railway heads, three doubler heads and picker, one grinding machine, twelve mules and four spinning frames, nineteen dressing machines and seventeen spindle frames, one drill press, forty-seven twisting machines, eight cap spoolers, one re-winder, eight reels, two lap machines and one cotton opener, which property was used in said mill when the mortgage was foreclosed. The appellant filed a petition in the foreclosure suit, praying that the respondent be enjoined from selling said machinery under the execution issued upon his judgments.

Upon a hearing of the parties, Vice-Chancellor Bird advised against the injunction, and it was denied. The appeal is from the decree refusing the injunction.

The facts in this case will be found in the opinion of Vice-Chancellor Bird, and need no further mention here. The question presented by the appeal is, whether certain machinery mentioned and described in the mortgage of appellant belongs to the class denominated fixtures, and passes with the real estate under the mortgage, or whether it is personal property and subject to seizure under execution of respondent, who is a judgment creditor of the mortgagors. The appellant's mortgage was not filed or recorded as a chattel mortgage, and its claim to have the property must fail unless the machinery in question had become part of the freehold. The description of property found in both mortgages clearly includes this in dispute, and had the appellant, beside registering them as mortgages of real estate, availed itself

of the statutory provisions concerning mortgages of chattels, nothing would stand in the way of its claim. But under settled rules, recognized and enforced by many adjudications in this state, there is no doubt that all the machinery which is made the subject of this contest is personalty. There is nothing in the case to show that it was ever annexed to the lands with the design to make it a part of the realty. The nature of the property, and its relations to the factory in which it was being used, differ in no material respect from the features which marked the case of *Rogers* v. *Brokaw, 10 C. E. Gr. 496; S. C. on appeal, 11 C. E. Gr. 567.* These instruments were all prepared and completely finished at the place of their manufacture ready for use in any locality where they might be required, and driving power could be applied. They needed no adaptation to the factory of the mortgagors, nor did their employment there require any change to be made in the building for their reception; they could at any time be removed without injury to themselves or detriment to the building, and could be used as well elsewhere as there. I see no evidence in any act of the owners, or in any circumstance growing out of the organization or manner of conducting the manufacturing establishment, showing a design on the part of the owners to make a permanent addition of the property in dispute to the realty. Without some act coupling the machines with the land, or with something appurtenant thereto, with the intention to permanently unite them, they are not transformed from personal things into lands; they continue in their quality of chattels personal until, by an executed intent, they are incorporated in the real estate. Then, and not before, do they lose their identity and separate existence. *Williamson* v. *New Jersey Southern R. R. Co., 2 Stew. Eq. 311, 329; Quinby* v. *Manhattan Co., 9 C. E. Gr. 260; Rogers* v. *Brokaw, supra.*

The appellant, in the argument here, relied, not alone upon the view that the subject of controversy passed under its mortgages as fixtures, but presented the further point that the respondent ought not to be permitted to stand here as a judgment creditor reaping any advantage over appellant from the provisions of the law respecting chattel mortgages, because, as alleged, a large part

of the money secured to the appellant by its present mortgages was loaned upon a prior security embracing the same property, for which the mortgages now held are a substitute, in which prior loan the respondent, as one of the then mill-owners, shared, and joined with his partners, the present owners, in the mortgage securing such loan. Appellant says that respondent is still its debtor for a part of the loan, and insists that under these circumstances he ought not, in a court of equity, to be permitted, as an ordinary judgment creditor, to antagonize the appellant's claim to take it as personalty. We deem it unnecessary to consider, on this appeal, what determination would be a just one between these parties upon a case made on the facts alluded to. No such case is embodied in the petition of the appellant, nor was it the subject of proof or consideration in the court below. We ought not, therefore, to give it a hearing in this appeal. The validity of the respondent's judgment is not questioned upon the record, and the appellant grounds his alleged priority of lien solely through the force and effect of its mortgages. Failing in that position, the decree below should be affirmed.

*Decree unanimously affirmed.*